UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

ANGEL A. RAMOS-COLLAZO,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Civil No. 13-1364 (JAF)

(Crim. No. 10-0231)

**OPINION AND ORDER**

Petitioner Angel A. Ramos-Collazo ("Ramos") comes before the court with a motion under 28 U.S.C. § 2255 to vacate, set aside or correct the sentence we imposed. He previously pled guilty to one charge of conspiracy to possess with the intent to distribute controlled substances within one thousand feet of a protected zone. (Docket No. 1.) Ramos claims ineffectiveness of the plea waiver, ineffective assistance of counsel, an involuntary or unknowing plea agreement, and an unreasonable sentence. Id. The United States opposes his motion. (Docket No. 3.) For the following reasons, we deny Ramos' § 2255 motion.

**I.**

**Background**

On October 4, 2010, Ramos signed a plea agreement and a plea supplement with the United States. (Crim. No. 10-0231, Docket Nos. 826-27.) Ramos pled guilty to Count One of the pending indictment, that he conspired to possess with the intent to distribute controlled substances within one thousand feet of a school and a public housing facility, in violation of Title 21 U.S.C. 841(a)(1), 846, and 860. (Crim. No. 10-0231,

Docket No. 826 at 1-2.) Ramos stipulated that he was accepting responsibility for at least three point five (3.5) but less than five kilograms of cocaine. Id. at 3. As stated in the plea agreement, the statute mandates a punishment of not less than five years and not more than eighty years, with a fine not to exceed $4,000,000 and a term of supervised release of at least eight years. Id. at 2. The plea agreement also calculated the sentencing guidelines. Because Ramos stipulated to the amount of cocaine, admitted to distributing controlled substances within one thousand feet of a protected location, stipulated to a leadership role, and accepted responsibility for his crime, the plea agreement estimated a sentence of one-hundred thirty-five to one-hundred sixty-eight months incarceration, assuming Ramos had a clean criminal history. Id. at 4. The parties also agreed to allow Ramos to argue for a downward departure due to his poor health, in accordance with U.S.S.G. § 5H1.4. The agreement, however, stated that Ramos would not argue for less than 120 months, and the United States reserved the right to oppose a downward departure. Id. at 4-5. The agreement also contained a waiver of Ramos' right to appeal the judgment or sentence. Id. at 7. On October 5, 2010, we accepted Ramos' guilty plea. (Crim. No. 10-0231, Docket No. 828.)

On May 26, 2011, Ramos submitted a sentencing memorandum arguing for a downward departure based on the sentencing factors in 18 U.S.C. § 3553(a). (Crim. No. 10-0231, Docket No. 1732.) Ramos argued that he had a severe drug addiction which he had overcome while in detention; that he had limited involvement in the conspiracy despite his supervisory role; that he did not participate in any violent conduct; that he did not involve himself with the sale of crack, cocaine or heroin; that he had a ninth-grade education; and that he had a chronic physical ailment. (Id. at 2-6.) He emphasized his desire for a downward departure under U.S.S.G. § 5H1.4 due to an

"extraordinary physical impairment," namely his Chronic Obstructive Pulmonary Disease or emphysema, as well as his esophageal reflux, high blood pressure, fatty liver infiltration, sleep apnea, and depression. Ramos described his daily treatment for a chronic pulmonary condition. Id. at 7-12.

On June 8, 2011, we sentenced Ramos to one-hundred thirty-five months imprisonment and eight years supervised release. We further recommended that he be enrolled in a substance abuse treatment program; that he be considered a candidate for work and education programs; that he be designated to serve his sentence at an institution in the Southeast region of the United States; and that special attention be given to his pulmonary condition. (Crim. No. 10-0231, Docket No. 1765.)

Ramos appealed his sentence. On October 12, 2012, his appeal was dismissed by the First Circuit because it fell within the terms of the appeal waiver contained in his plea bargain. The First Circuit noted that "[e]ven if Ramos-Collazo had not waived his appeal, we would affirm the sentence, which is procedurally and substantively reasonable." United States v. Ramos-Collazo, Appeal No. 11-1729 (1st Cir. October 12, 2012). On May 9, 2013, Ramos filed the instant motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. (Docket No. 1.) The United States filed a response in opposition on June 14, 2013. (Docket No. 3.) On August 6, 2013, Ramos filed a reply. (Docket No. 6.)

We have jurisdiction to hear this case pursuant to 28 U.S.C. § 2255, because Ramos is currently in federal custody having been sentenced by this District Court. To file a timely motion, Ramos had one year from the date his judgment became final. 28 U.S.C. § 2255(f). His judgment became final on the last day that he could have filed a petition for a writ of certiorari, which was ninety days after the entry of the Court of

Appeals' judgment. Sup. Ct. R. 13(1); <u>Clay v. United States</u>, 537 U.S. 522 (2003). Because Ramos filed his appeal well within one year and ninety days on October 12, 2012, his petition is timely.

## II.

## Discussion

Ramos argues that his plea waiver was ineffective; his counsel was ineffective; his plea agreement was either involuntary or unknowing; and he was given an unreasonable sentence due to a failure of the court to meet the requirements of 18 U.S.C. § 3553. (Docket No. 1.) We find these arguments unpersuasive.

### A.   **Ineffective Plea Waiver**

Ramos claims that his plea waiver was ineffective. (Docket No. 1 at 19.) The First Circuit has already upheld his waiver, holding that the sentence we imposed fell within the terms of the waiver in his plea agreement. <u>United States v. Ramos-Collazo</u>, Appeal No. 11-1729 (1st Cir. Oct. 12, 2012). Issues decided in a prior appeal cannot be re-litigated in a 28 U.S.C. § 2255 motion. <u>Singleton v. United States</u>, 26 F.3d 233 (1st Cir. 1994).

### B.   **Ineffective Assistance of Counsel**

Ramos also claims that he had ineffective assistance of counsel. <u>Id.</u> at 20. To prove a claim of ineffective assistance of counsel, Ramos must show that both: (1) the attorney's conduct "fell below an objective standard of reasonableness;" and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Wash.</u>, 466 U.S. 668, 688-94 (1984). Because Ramos pled guilty, to satisfy the second prong he must show "a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In support of his claim, Ramos submits an email he sent to his attorney in which he thought he had been offered ten years imprisonment. His attorney's reply stated that the plea agreement allowed for the attorney "to argue for 120 months due to [his] medical condition," and that his "plea doesn't have a mandatory 10 year term for which the Court may very well sentence [him] to even less depending on the information found in [his] medical records and the sentencing memorandum." (Docket No. 1 at 21, 33). We need not examine counsel's performance, because it is clear from the change-of-plea hearing that any potential miscommunication did not induce Ramos to plead guilty. See Strickland, 466 U.S. 668 (holding that a court may dismiss a claim for failure to show prejudice without examining attorney performance). In court, we engaged in the following colloquy:

> **THE COURT:** In the case of Mr. Ramos, you start with a base offense level of 30, because you stipulated at least 3.5 but less than five kilos of cocaine. Two points are added because of the location where the facts took place. Four points are added because of leadership role. Three points are shaved off or taken away because of your acceptance. **You end up with a 33, guideline imprisonment range of 135 to 168. Do you understand that?**
>
> **DEFENDANT RAMOS: Yes.**

(Crim. No. 10-0231, Docket No. 1923) (emphasis added).

Ramos also submits that his counsel was ineffective because the sentencing memorandum asserts that Ramos "did not involve himself directly with the sale and/or distribution of crack, cocaine or heroin" despite the plea agreement's admission to involvement with cocaine. (Docket No. 1 at 23.) Again, we dismiss this claim because Ramos has failed to show how he was prejudiced by this assertion. See Strickland, 466 U.S. 668. Ramos asserts that these claims "contributed to the total disregard of Counselor

Mariani-Franco's arguments at sentencing." (Docket No. 1 at 23.) However, as discussed infra, the attorney's arguments were duly considered.

**C.    Plea Agreement Was Neither Knowing Nor Voluntary**

Ramos further argues that his plea agreement was neither voluntary nor knowing because his counsel was ineffective and because he entered into the agreement based on his attorney's representations. (Docket No. 1 at 24.) Again, Ramos' waiver was upheld by the First Circuit. United States v. Ramos-Collazo, Appeal No. 11-1729 (1st Cir. Oct. 12, 2012). Further, we engaged in the following colloquy in court:

> THE COURT: [T]hat means that if I sentence you within the confines of the Plea Agreement, there will be no right to appeal. The decision that I make is final. Is that understood?
>
> DEFENDANT RAMOS: Yes.

(Crim. No. 10-0231, Docket No. 1923.)

**D.    Unreasonable Sentence**

Finally, Ramos claims that our sentence was unreasonable for failure to meet the requirements of 18 U.S.C. §§ 3553(a) and (c). (Docket No. 1 at 25.) He argues that we did not consider the sentencing factors contained in the statute and that we failed to state the reasons for his sentence. (Docket No. 1 at 25-26.)

We begin by noting that the First Circuit wrote: "[e]ven if Ramos-Collazo had not waived his appeal, we would affirm the sentence, which is procedurally and substantively reasonable." United States v. Ramos-Collazo, Appeal No. 11-1729 (1st Cir. Oct. 12, 2012). For, as Ramos himself notes, a "judge need not mention every § 3553(a) factor." United States v. Dennison, 689 F.3d 21, 28 (1st Cir. 2012). To survive scrutiny, a court's explanation must simply show "a thoughtful exercise of the court's sentencing responsibility and a degree of care and individualized attention appropriate to the solemnity of the

sentencing task." U.S. v. Smith, 531 F.3d 109, 112 (1st Cir. 2008) (quoting U.S. v. Vazquez-Molina, 389 F.3d 54, 59 (1st Cir. 2004)).

We stated in court that we were aware of Ramos' sentencing memorandum detailing his arguments for mitigation. (Crim. No. 10-0231, Docket No. 1922 at 4.) We considered "the nature and circumstances of the offense and the history and characteristics of the defendant" per 18 U.S.C. § 3553(a)(1), as well as "the need for the sentence imposed … to afford adequate deterrence to criminal conduct [and to] protect the public from further crimes of the defendant" per 18 U.S.C. §§ 3553(a)(2)(B)-(C). In doing so, we noted that Ramos had previously been "caught with a crack pipe" and had only been sentenced to a two-year probation term on the related charges. We observed that a previous lack of deterrence was "why we have him here" again for similar crimes. (Crim. No. 10-0231, Docket No. 1922 at 4.) Handing down a harsher sentence than Ramos would like "does not reveal an inattentiveness to his history and characteristics, but rather [… shows that we …] weighed them differently." United States v. Butler-Acevedo, 656 F.3d 97, 101 (1st Cir. 2011). We applied the guidelines in accordance with 18 U.S.C. § 3553(a)(4)(A) and 18 U.S.C. § 3553(b), and explained in open court each of the reasons for upward and downward departures. (Crim. No. 10-0231, Docket No. 1922 at 11-12.) In the end, we sentenced Ramos to the lower end of the applicable guidelines range. (Id.) A district court sentence that "reflects a proper application of the sentencing guidelines" is presumptively reasonable. Rita v. United States, 551 U.S. 338, 347 (2007).

Ramos also claims that we "summarily dismissed" his medical condition. (Docket No. 1 at 25-26.) However, we noted that Ramos received "treatment for his high blood pressure. He's receiving treatment for his pulmonary condition, Albuterol, three times a day." (Crim. No. 10-0231, Docket No. 1922 at 6.) We also recommended to the Bureau of

Prisons that he get "special attention to his pulmonary condition." (Crim. No. 10-0231, Docket No. 1922 at 13.) The record reflects due consideration for Ramos' illness.

## IV.

## **Certificate of Appealability**

In accordance with Rule 11 of the Rules Governing § 2255 Proceedings, whenever issuing a denial of § 2255 relief we must concurrently determine whether to issue a certificate of appealability ("COA"). We grant a COA only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). While Ramos has not yet requested a COA, we see no way in which a reasonable jurist could find our assessment of his constitutional claims debatable or wrong. Ramos may request a COA directly from the First Circuit, pursuant to Rule of Appellate Procedure 22.

## V.

## **Conclusion**

For the foregoing reasons, we hereby **DENY** Petitioner's § 2255 motion (Docket No. 1). Pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings, summary dismissal is in order because it plainly appears from the record that Petitioner is not entitled to § 2255 relief from this court.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 11th day of October, 2013.

                                                                   S/José Antonio Fusté
                                                                    JOSE ANTONIO FUSTE
                                                                    U. S. DISTRICT JUDGE